IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **The Estate of Michael Calvin Spaulding,** **deceased, a Wrongful Death Estate,** brought for the exclusive benefit of the surviving spouse and children, by and through his personal representative, **Michael S. Spaulding, Administrator,** (address to be filed under seal), and, **Jacqueline Hudgens-Spaulding,** surviving spouse, (address to be filed under seal), and, **Natika Spaulding,** **daughter,** (address to be filed under seal), and, **Akeem Spaulding,** **son,** (address to filed under seal), and, **Michael Spaulding,** **son,** (address to be filed under seal), Plaintiffs, v. **The Islamic Republic of Iran ("IRAN"),** Ministry of Foreign Affairs Khomeini Avenue | Case No. _____ Judge_____ Magistrate_____ **COMPLAINT FOR WRONGFUL DEATH PURSUANT TO THE TERRORISM EXCEPTION TO THE JURISDICTIONAL IMMUNITY OF A FOREIGN STATE, 28 U.S.C. § 1605A(a)(1) *ET SEQ.*, AND OHIO R.C. § 2125.01 *ET SEQ.*** *(Jury Demand Endorsed Hereon)* |

Plaintiffs' Complaint - 1

- 1 -

| | | |
|---|---|---|
| 1 | United Nations Street | ) |
|   | Tehran, Iran, | ) |
| 2 |   | ) |
|   | and, | ) |
| 3 |   | ) |
|   | **The Iranian Ministry of Information** | ) |
| 4 | **and Security**, | ) |
| 5 | Pasdaran Avenue | ) |
|   | Golestan Yekom | ) |
| 6 | Tehran, Iran, | ) |
|   |   | ) |
| 7 | and, | ) |
|   |   | ) |
| 8 |   | ) |
|   | **Bank of Markazi Jomhouri Islami Iran**, | ) |
| 9 | Central Bank of Iran, | ) |
|   | Mirdamad Blvd., NO.198 | ) |
| 10 | Tehran, Islamic Republic of Iran | ) |
|   | P.O. Box: 15875 / 7177 | ) |
| 11 |   | ) |
|   |   | ) |
| 12 | Defendants. | ) |

NOW COME the Plaintiffs, *Michael S. Spaulding, Administrator, as personal representative of the Estate of Michael Calvin Spaulding, et al.*, and for their Complaint against the Defendants hereby allege and aver as follows:

## THE PARTIES

1. The Plaintiff, Estate of Michael Calvin Spaulding, is an estate open to administer a wrongful death claim on behalf of Michael Calvin Spaulding, deceased.  The Estate is open before the Probate Court of Summit County, Ohio, *In the Matter of the Estate of: Michael Calvin Spaulding, deceased*, Case No. 2016 ES 00490, Summit County, Ohio.  (See Letters of Authority attached as "Exhibit 1.")

2. The Plaintiff, Jacqueline Hudgens-Spaulding, was the wife, widow, and surviving spouse of Michael Calvin Spaulding.

3. The Plaintiff, Natika Spaulding, is the daughter of Michael Calvin Spaulding.

4. The Plaintiff, Akeem Spaulding, is the son of Michael Calvin Spaulding.

5. The Plaintiff, Michael S. Spaulding, is the son of Michael Calvin Spaulding.

6. The Defendant, The Islamic Republic of Iran ("Iran"), has been designated by the United States of America, since January 19, 1984, as a "State Sponsor of Terrorism."  Countries determined by the Secretary of State to have repeatedly provided support for acts of international terrorism are designated "State Sponsors of Terrorism" pursuant to three laws: Section 6(j) of the Export Administration Act, Section 40 of the Arms Export Control Act, and Section 620A of the Foreign Assistance Act.

7. The Defendant, The Iranian Ministry of Information and Security, is an agency of the Defendant, The Islamic Republic of Iran, whose activities included, at times relevant to this action, the prosecution of terrorist acts directed against the armed forces of the United States and United States' citizens, by and through material support to various terrorist organizations including, but not limited to, the Lebanese terrorist organization known as "Hezbollah."

8. The Defendant, "BANK MARKAZI JOMHOURI ISLAMI IRAN," is the central bank of the Islamic Republic of Iran.  The Central Bank of Iran (CBI) was established in 1960 (1339 solar year).  As stated in the Monetary and Banking Act of Iran (MBAI), CBI is responsible for the design and implementation of the monetary and credit policies with due regard to the general economic policy of the country of Iran.

**JURISDICTION AND VENUE**

9. This is an action for wrongful death under Ohio law, Ohio RC § 2125 *et seq*.

10. The Court has subject matter jurisdiction because this case is filed in United States federal district court pursuant to diversity jurisdiction under 28 USC § 1332 *et seq*., and the amount in controversy exceeds $75,000.

11. This Court has jurisdiction over the foreign state Defendant pursuant to the terrorism exception to the jurisdictional immunity of a foreign state, 28 USC § 1605A.

12. This Court has personal jurisdiction over the Defendants by virtue of their actions, which include being a sponsor of terrorism, which terrorism caused the wrongful death of Michael Calvin Spaulding, and caused his surviving spouse, and children, to suffer damages by reason of the wrongful death.

13. Venue is proper in the Northern District of Ohio because Michael Calvin Spaulding was a resident of Summit County at the time of his death.

**FACTUAL ALLEGATIONS**

14. The 1983 Beirut barracks bombings were terrorist attacks that occurred on October 23, 1983, in Beirut, Lebanon, during the Lebanese Civil War when two truck bombs struck separate buildings housing United States and French military forces – members of the Multinational Force in Lebanon (MNF) – killing 241 U.S. and 58 French servicemen, six civilians, and the two suicide bombers.

15. Michael Calvin Spaulding, deceased, died in the Beirut barracks bombings. He was one of the 241 U.S. servicemen killed that day.

16. A group calling itself "Islamic Jihad' claimed responsibility for the bombings.

17. Upon information and belief, the chain of command to Islamic Jihad ran from the government of Iran, to Iran's Ambassador to Syria, to Iranian Revolutionary Guard Corps' commander Hossein Dehgan in Beirut.

18. In 2004, the Iranian government erected a monument in Tehran, Iran to commemorate the 1983 Beirut barracks bombings and its "martyrs." (See a photograph of the monument in Iran to the suicide bombing "martyrs" attached hereto as "Exhibit 2.") The government of Iran is apparently proud of the suicide bombers that killed Michael C. Spaulding.

19. Civil lawsuits have previously been filed in federal courts against Iran for wrongful death stemming from the Beirut barracks bombings, see, e.g., *Deborah D. Peterson, Personal Representative of the Estate of James C. Knipple, et al. v. The Islamic Republic of Iran, et al.* (U.S. District Court for the District of Columbia, Case No. 01-2684, Judge Royce C. Lambert).

20. Default judgments have been taken against Iran in *Peterson* and similar cases. Over $2 billion dollars was awarded to the plaintiffs in *Peterson*.

21. In April of 2016, the United States Supreme Court ruled that frozen assets of Iran's Central Bank held in the United States at Citibank in New York could be used to pay compensation to families of the Beirut barracks bombings. See, *Bank Markazi aka Central Bank of Iran v. Peterson et al.*, (decided April 20, 2016) (Docket No. 14-770) (578 U.S. ___(2016)).

22. In *Bank of Markazi, supra,* the U.S. Supreme Court ruled 6-2 that Section 8772 of the Iran Threat Reduction and Syria Human Rights Act of 2012, which makes a set of assets held at a New York bank for Bank Markazi, the Central Bank of Iran, available for post-judgment execution to partially satisfy judgments in actions brought by victims of terrorist acts

Plaintiffs' Complaint - 5

5 - 5 -

sponsored by Iran, and that the law does not violate the separation of powers. Approximately $1.75 billion of assets owned by the Bank of Markazi were frozen in New York's Citibank.

23. Plaintiffs are entitled to judgment against the Defendants, jointly and severally.

### CLAIM NO. 1
*(Wrongful Death Action under Ohio RC § 2125.02 et seq.)*

24. The Plaintiffs hereby incorporate by reference each statement, whether written above or below, as if each is fully re-written herein.

25. 28 USC § 1605A(a) provides a terrorism exception to the jurisdictional immunity of a foreign state.

26. Under 28 USC § 1605A(b), an action may be brought or maintained under this section if the action is commenced, *or a related action was commenced* not later than the latter of 10 years after April 24, 1996. *Id.* at (b)(1).

27. The *Peterson, supra*, litigation, is a related action to this case, which was commenced in 2002, which was not later than 10 years after April 24, 1996. As such, this action is timely commenced within the statute of limitations imposed under 28 USC § 1605A(b)(1).

28. 28 USC § 1605A(c)(2) provides for a private right of action against foreign states that sponsor terrorism, which cause harm to members of the armed forces. 28 USC § 1605A(c)(4) provides that such private rights of action can be commenced by the legal representative of a person injured or killed by terrorism, which are the facts present in this case.

29. The Plaintiffs in this action consist of the family of Michael C. Spaulding, who was a member of the U.S. armed forces, and whom died as a result of injuries inflicted in the

terrorist attack upon the headquarters building of the 24th Marine Amphibious Unit in Beirut, Lebanon on October 23, 1983.

30. Hezbollah is an organization of Lebanese Muslims who are adherents of the Shiia or Shiite faction of Islam. It represents itself as an Islamic freedom fighting movement which views any part of the Near East under the control of the State of Israel as occupied land. It advocates the expulsion of the United States from the Near East and is committed to violent action to that end and to the termination of the existence of Israel.

31. At all times relevant to this action, Hezbollah was being given extensive support by the Defendants which permitted it to carry out a wide ranging program of terrorism against the United States and the State of Israel and a social welfare program designed to garner political support amongst the Shiite population of Lebanon.

32. In 1983, at the time of the acts giving rise to this Complaint, Hezbollah was under the complete operation control of the Defendants, through Iranian Revolutionary Guards units within Lebanon.

33. The Shiia or Shiite Community in Lebanon had been economically depressed for an extended period of time prior to the date of the occurrence and was further disadvantaged by a level of education far below that of other major groups within Lebanon.

34. The provision of extensive economic support by the Defendants to Hezbollah was necessary for that organization to carry out a terrorist attack of the scope and technological sophistication of the attack of October 23, 1983.

35. The mission statement of the 24th Amphibious Unit on October 23, 1983 was to provide a presence in Beirut that would in turn help establish the stability necessary for the Lebanese

government to regain control of their capital. The unit operated under normal, peacetime rules of engagement.

36. Their geographic position was in a reinforced concrete building at the Beirut Airport. Although there was sporadic small arms and mortar fire directed at the airport, the Unit only replied through counter-fire when receiving attacks. There was no mission designated by the United States or Lebanese governments or anyone else under which the Unit was a participant in the ongoing civil war.

37. Acting on instructions from the Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security, the Iranian agents of the Defendants in operational control of Hezbollah, with high level technical participation which would not have been available to Hezbollah in the absence of Iranian control and participation, carried out the construction of a gas enhanced explosive device with an explosive force equal to 5,000 pounds of explosives.

38. This was mounted in a large truck of a type commonly seen on construction projects which had been determined by Iranian terrorist experts to have sufficient weight to crash through an outer barbed wire emplacement, yet would fit between two sandbagged sentry posts, then penetrate through an iron fence gate, climb over a sewer pipe obstruction and through a sandbag inner barrier obstruction into a passenger entry hallway into the center lobby of the building to a position at which Iranian explosive experts had calculated an explosion of the magnitude to be produced by the device would collapse the structure.

39. At approximately 6:22 a.m., Beirut time, on October 23, 1983, the attack was carried out exactly in the complex manner planned by the Iranian agents, producing the results which their calculations had led them to expect.

40. The collapse of the four story, reinforced concrete structure resulted in the deaths of approximately 241 members of the U.S. Armed Forces, including the death of Michael Calvin Spaulding, who was an Akron resident on deployment to Beirut.

41. The actions of the agents of the Defendants set forth above constituted acts of torture, extrajudicial killing, and the provision of material resources for these acts as defined in Section 2339A, Title 18, U.S. Code.

42. The formation of Hezbollah and its emergence as a major terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards, the Defendant, the Ministry of Information and Security and Ali Akbar Mohtashemi, acting as Interior Minister of the Defendant, The Islamic Republic of Iran, and the Iranian Ambassador to Syria. The above activities of Hezbollah were financed, technologically supported, and commanded by the Defendants.

43. The Defendants' sponsorship of terrorism was a direct and proximate cause of Mr. Spaulding's death.

44. The Plaintiffs in this case are rebuttably presumed to have suffered damages as a result of Mr. Spaulding's wrongful death.

45. As a direct and proximate result of the wrongful death, the Plaintiffs have suffered loss of support, loss of services, loss of society, and loss of companionship, care, assistance,

attention, protection, advice, guidance, counsel, instruction, training, and education. The Plaintiffs have also, understandably, suffered mental anguish.

## PRAYER FOR RELIEF / REQUEST FOR REMEDIES

WHEREFORE, the Plaintiffs pray that this Court enter an Order against the Defendants, jointly and severally, as follows:

A) Sixty Million Dollars ($60,000,000.00) to the Estate of Michael C. Spaulding, deceased;

B) Fifteen Million Dollars ($15,000,000.00) to Jacqueline Hudgens-Spaulding;

C) Fifteen Million Dollars ($15,000,000.00) to Natika Spaulding;

D) Fifteen Million Dollars ($15,000,000.00) to Akeem Spaulding;

E) Fifteen Million Dollars ($15,000,000.00) to Michael Spaulding;

F) An award of compensatory and punitive damages against the Defendants;

G) An assessment of interest on the damages so computed;

H) An award of attorney's fees and costs;

I) Damages according to each cause of action herein;

J) Prejudgment interest; and

K) Any such other relief in law or equity that this honorable Court deems just and proper.

## JURY DEMAND

WHEREFORE, the Plaintiffs request a trial by jury on all issues so triable.

Most Respectfully Submitted,

   **/s/ David A. Welling**
**DAVID A. WELLING (0075934) (lead counsel)**
**C. VINCENT CHOKEN (0070530)**
CHOKEN WELLING LLP
55 S. Miller Rd., Ste. 203
Akron, Ohio 44333
Tel.   (330) 865 – 4949
Fax   (330) 865 – 3777
davidw@choken-welling.com
vincec@choken-welling.com

**JOHN D. GUGLIOTTA (0062809)**
PATENT COPYRIGHT TRADEMARK LAW GROUP
3020 W. Market St., Ste. C
Fairlawn, Ohio 44333
Tel.   (216) 696 – 1422
Fax   (216) 696 – 1210
johng@inventorshelp.com

*Counsel for the Plaintiffs*